708 So.2d 990 (1998)
In the Interest of M.M., V.M., O.M., III, R.M., T.Z., F.Z., L.Z., and S.Z., Children.
O.M. and M.Z., parents, Appellants,
v.
STATE of Florida, DEPARTMENT OF CHILDREN AND FAMILIES, f/k/a/ Department of Health and Rehabilitative Services, Appellee.
Nos. 97-00329, 97-00449.
District Court of Appeal of Florida, Second District.
March 25, 1998.
Shea T. Moxon of Richard Escobar, P.A., Tampa, for Appellants.
Robert A. Butterworth, Attorney General, Tallahassee, and Gary G. Carpenter, Assistant Attorney General, Children's Legal Services, Tampa, for Appellee.
ALTENBERND, Judge.
The mother and father appeal a default judgment that terminated their rights to their eight children. We reverse because the trial court had no authority to enter a *991 default when the parents, who were represented by counsel, were ninety minutes late to an adjudicatory hearing. The trial court also erred when it allowed the attorneys representing these indigent parents to withdraw during the period in which notices of appeal are filed and records are prepared.
In April 1996, after four years of dependency proceedings, the State of Florida Department of Health and Rehabilitative Services (HRS), now known as the Department of Children and Families, filed a petition to terminate the parents' rights to their eight children.[1] It is undisputed that the parents appeared at an advisory hearing and requested the appointment of counsel. See § 39.466, Fla. Stat. (1995); Fla. R. Juv. P. 8.510(a). If they had failed either to respond to that notice of hearing or to appear at the hearing, both the statutes and rules state that their inaction would be treated as consent to the termination. § 39.462(1)(a), Fla. Stat. (1995); Fla. R. Juv. P. 8.505(d). Once the parents requested counsel at the advisory hearing, they had a constitutional right to legal representation at the subsequent hearings. See In Interest of D.B., 385 So.2d 83 (Fla.1980).
The trial court scheduled an adjudicatory hearing for January 6 and 7, 1997, beginning on January 6 at 1:30 p.m. On September 26, 1996, numerous summonses were served on both parents for this hearing.[2] Separate attorneys were appointed to represent each parent on November 25, 1996, and advised of the two-day hearing.
At approximately 1:10 p.m., on January 6, the father's attorney received a telephone call from his client, who explained that his truck had broken down at the intersection of 50th Street and Columbus Drive in Tampa, and that he and the mother still needed to change into clothing suitable for the courtroom, as required by the summonses. His attorney stressed the importance of the adjudicatory hearing and urged his client to appear.
At the beginning of the adjudicatory hearing, the father's attorney explained the situation and moved for a continuance. HRS moved for a default. The trial court denied the motion for continuance, granted the default, and dispensed with the evidentiary hearing at 1:48 p.m. The parents arrived at the courthouse at 3 p.m. to find that the trial was over. No final order had been entered at that time or when the parents filed timely motions to set aside default. These motions were denied on January 23, 1997. The trial court never suggested that it did not believe the parents' explanation for their tardiness. It simply denied their motions to set aside default on the ground that their actions were "too little too late."[3]
Prior to the hearing on January 23, the attorneys representing the parents filed motions for discharge. Orders granting those motions were filed before noon on the date of that hearing. Fortunately, one of the attorneys prepared notices of appeal for the parents to file pro se. The notices requested the trial court to appoint counsel for appeal. These notices were signed by the parents and filed on January 23, 1997.
*992 On February 11, 1997, "nunc pro tunc" to January 23, the trial court entered an order denying the motions to set aside default. On that same date, it entered the order terminating parental rights "nunc pro tunc" to January 6, 1997. The court, however, did not enter any order on that date appointing appellate counsel for the parents.

I. THE DEFAULT
Although the statutes and rules suggest that a default may be appropriate when a properly served parent fails to attend an advisory hearing, no statute or rule authorizes a trial court to default a represented parent who is late to the adjudicatory hearing. In this case, had the trial judge simply proceeded with the hearing, HRS would have had many witnesses left to call when the parents arrived. The parents were not subpoenaed by HRS to testify. Each of the many summonses is a standard form that tells the parents that they are "required to appear" for "a/an term par. right adj/disp hearing." At the bottom of the summons is the statutory language for an advisory hearing that states:
Failure to respond to this summons or to appear at this hearing constitutes consent to the termination of parental rights of this child (or these children).
Even assuming that this language is appropriate for an adjudicatory hearing, these parents did "respond" or "appear" through their counsel. Nothing in Florida Rule of Civil Procedure 1.500 authorizes a default in this situation, especially since the parents are not required to file any written answer to a termination petition. See § 39.463, Fla. Stat. (1995). There is no finding or evidence that the parents willfully disobeyed any court order. See Commonwealth Fed. Sav. & Loan Ass'n v. Tubero, 569 So.2d 1271 (Fla.1990). Without reaching the constitutional due process issue, we hold that the trial court had no statutory or procedural authority to enter a default against the parents in this case. Accordingly, we reverse that portion of the default judgment that terminates parental rights and remand for an adjudicatory hearing.

II. APPOINTMENT OF APPELLATE COUNSEL
Florida Rule of Appellate Procedure 9.146(g) requires courts to expedite appeals in parental termination proceedings. This rule fulfills the statutory mandate of section 39.473(1), Florida Statutes (1995). Even when appeals are not expedited, the appellant's attorney is required to file in the trial court any directions to the clerk and designations to the court reporter within ten days of the notice of appeal. See Fla. R.App. P. 9.200. Normally, the record is completed by the clerk within fifty days and the initial brief is due within seventy days. See Fla. R.App. P. 9.110(e), (f). In this case, neither the trial judge nor the attorney representing HRS[4] took steps to see that the parents were represented by appointed counsel to handle the appeal, despite the parents' written request. The initial brief should have been filed in early April. When nothing had been received by this court in April, we issued an order to show cause why sanctions should not be imposed. In response to that order, Mr. Moxon filed an appearance as appellate counsel for the parents and requested an extension of time, explaining that he had been appointed on April 22, 1997. We granted his motion, and he has handled the appeal expeditiously and competently.
The ninety-day delay in processing this expedited appeal was caused by the trial court's premature order allowing trial counsel to withdraw. Trial courts should understand that it is the task of trial counsel in a parental termination proceeding to file the notice of appeal in the trial court and to arrange for the preparation of a record, just as these functions are the task of trial counsel in a criminal case. See § 27.51(4), Fla. Stat. (1997) (providing that local public defender remain as counsel of record until record on appeal is transmitted). Once the record is prepared, the trial court can either retain trial counsel to handle the appeal or *993 arrange for substitution of counsel, but the court is not free to discharge trial counsel until all trial functions are complete.
Reversed and remanded with directions.
PARKER, C.J., and GREEN, J., concur.
NOTES
[1] The petition requested an adjudication of dependency for a newborn child, as well as the termination of parental rights. The default judgment adjudicated dependency for the child. Because the adjudication of dependency was not directly challenged on appeal and we are uncertain of the present status of that child, we affirm the adjudication of dependency, but authorize the parents to file a motion for rehearing on remand.
[2] Each parent was apparently to receive a summons for each child and each day of trial. From the record supplied to this court, it appears that the father was not summoned for M.M. for January 6, that the mother was not summoned for two of the children for January 6, that the father was not summoned for three of the children for January 7, and the mother was not summoned for two of the children for January 7.
[3] In assessing any urgency in these proceedings, which might have caused the trial judge to find the parents' actions to be "too little too late," we note that the State has no adoption plans for these children. Instead, it intends for these children to live permanently as foster children in a home with a relative who will allow the parents to visit. We also note that this is another case in which the inadequate supply of guardians ad litem caused no guardian to be appointed to represent these children at any time during the dependency or termination proceedings. See In re E.F., 639 So.2d 639 (Fla. 2d DCA 1994).
[4] By the time of this appeal, the functions had been transferred to the Department of Children and Families, but the attorney representing the State in this appeal handled the matter at trial and at all times thereafter.