800 So.2d 692 (2001)
J.T. and N.T., Parents of J.L.K., J.T., Jr., et al., Children, Appellants,
v.
DEPARTMENT OF CHILDREN AND FAMILIES, Appellee.
No. 5D01-1428.
District Court of Appeal of Florida, Fifth District.
November 30, 2001.
*693 Ryan Thomas Truskoski of Ryan Thomas Truskoski, P.A., Orlando, for Appellant N.T.
Timothy A. Straus of Moyer, Straus & Patel, P.A., Altamonte Springs, for Appellant J.T.
Kelly A. Swartz, Child Welfare Legal Services, Department of Children and Families, Orlando, for Appellee.
COBB, J.
This appeal challenges an order terminating parental rights. The parents, who did not attend the adjudicatory hearing, contend that the trial court erred in not continuing said hearing at the request of their counsel, who did appear. Indeed, counsel for the parents was aware of the date, time and place of the adjudicatory hearing and requested a continuance at the outset of the proceeding:
the reason being that my clients both normally have been here. They have been notified. They usually appear. They're not here.... (Emphasis added).
The trial court denied the motion and was informed by counsel for the Department of Children and Families that the parents had been at the advisory hearing where they were notified of the time and date of the adjudicatory hearing. The parents' counsel, having already conceded that her clients had been notified, did not challenge this assertion.
The instant record reflects without contradiction that the parents received notice of the adjudicatory hearing. No issue as to the adequacy of the notice was raised at the hearing. Under these circumstances, if the parents believe the notice was somehow infirm, it is their burden to seek relief from the order by making a proper showing pursuant to Florida Rule of Juvenile Procedure 8.270(b) which governs relief from judgments or orders.
The parents' reliance on In re E.L., 732 So.2d 37 (Fla. 2d DCA 1999) is misplaced. In E.L., the mother's counsel did not concede that his client had been notified of the hearing. Equally important, in E.L., the court terminated parental rights based solely upon the mother's default in failing to appear at the hearing. See § 39.801(3)(d), Fla. Stat. Here, the court took testimony and found that termination was proper, irrespective of the parents' non-appearance, given the evidence of their failure to substantially comply with the case plans and their failure to remedy the conditions which led to the children's removal from their care. The termination was not predicated simply upon the parents' default.
Finally, the motion for continuance, which merely asserted that the parents were no-shows without asserting any *694 ground whatsoever for such non-appearance, was properly denied. C.J. v. Department of Children and Families, 756 So.2d 1108 (Fla. 3d DCA 2000)(decision to grant or deny continuance is within sound discretion of trial court). Accordingly, we affirm the order terminating parental rights.
AFFIRMED.
GRIFFIN, J., concurs.
PLEUS, J., concurs specially, with opinion.
PLEUS, J., concurring specially, with opinion.
I concur in Judge Cobb's opinion for the reason that the issue was not properly preserved for appeal. Florida Rule of Juvenile Procedure 8.270(b) may be available to the parents provided they can establish they were not properly notified.
Judge Cobb states that "the instant record reflects without contradiction that the parents received notice of the adjudicatory hearing." My reading of the record on appeal leads me to conclude the evidence of notice to the parents is less than clear. In my opinion, there is not sufficient evidence in the record on appeal that the parents were notified by the trial court to appear at a time and date certain for the adjudicatory hearing at which their rights were terminated. Counsel for the parents, at the beginning of the hearing, requested a continuance because the parents were not present. Counsel asserted that the parents "have been notified" and have generally been present at all previous hearings in this matter, including, presumably, the advisory hearing, at which the court was supposed to set the date, time and place of the adjudicatory hearing to follow.
Following the denial of the continuance request, the following dialogue took place between counsel for the Department of Children and Families (DCF) and the trial court:
[DCF attorney]: Judge, I would ask that the Court enter a consent on behalf of the parents for their failure to appear hear today. And ...
The Court: They were served?
[DCF attorney]: They were here at the advisory and were notified that they needed to be here today for the trial.
The Court: Were they told the specific date and time?
[DCF attorney]: Yes, Judge. I'm looking for the order now. Some of the orders I haven't gotten back yet, but....
The DCF, with the court's permission, then put on its case without the parents present. The DCF never produced any order showing that the adjudicatory hearing was set at the advisory hearing. While the parents' counsel did concede his clients "have been notified," what they were notified of, by whom, and how, is unclear from the record on appeal. The only thing on which the record is clear is that the order entered at the earlier advisory hearing, at which the court was supposed to inform the parents of the time, place, and date of the adjudicatory hearing, left blank a box in which the date and time for the adjudicatory hearing were to have been specified. This happens all too often in juvenile divisions when using form orders.
Section 39.801(d), Florida Statutes (1999) provides:
(d) If the person served with notice under this section fails to personally appear at the advisory hearing, the failure to personally appear shall constitute consent for termination of parental rights by the person given notice. If a parent appears for the advisory hearing and the court orders that parent to personally appear at the adjudicatory hearing for the petition for termination *695 of parental rights, stating the date, time, and location of said hearing, then failure of that parent to personally appear at the adjudicatory hearing shall constitute consent for termination of parental rights.
(Emphasis added).
Florida Rule of Juvenile Procedure 8.525(d) similarly provides:
(d) Presence of Parties. All parties have the right to be present at all termination hearings. A party may appear in person or, at the discretion of the court for good cause shown, by an audio or audiovisual device. No party shall be excluded from any hearing unless so ordered by the court for disruptive behavior or as provided by law. If a parent appears for the advisory hearing and the court orders that parent to personally appear at the adjudicatory hearing for the petition for termination of parental rights, stating the date, time, and location of said hearing, then failure of that parent to personally appear at the adjudicatory hearing shall constitute consent for termination of parental rights.
(Emphasis added).
The advisory hearing is held to inform the parties of their rights and to set the date for the adjudicatory hearing. J.B. v. Florida Dept. of Children and Family Services, 768 So.2d 1060, 1065 (Fla.2000). Nothing in the record establishes that this basic notion of procedural due process was afforded to the parents.
In J.B., 768 So.2d 1060, 1063-64, the Florida Supreme Court quoted from its earlier opinion, Dept. of Law Enforcement v. Real Property, 588 So.2d 957, 960 (1991), the following:
Procedural due process serves as a vehicle to ensure fair treatment through the proper administration of justice where substantive rights are at issue. Procedural due process under the Florida Constitution guarantees to every citizen the right to have that course of legal procedure which has been established in our judicial system for the protection and enforcement of private rights. It contemplates that the defendant shall be given fair notice and afforded a real opportunity to be heard and defend in an orderly procedure, before judgment is rendered against him.
The manner in which due process protections apply vary with the character of the interests and the nature of the process involved. There is no single, inflexible test by which courts determine whether the requirements of procedural due process have been met. Id. at 960 (emphasis added) (citations omitted).
The court went on to state:
The significance of the rights at issue here cannot be overstated. In Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982), the United States Supreme Court considered termination of parental rights procedures under New York law. At issue in Santosky was whether the "fair preponderance of the evidence" standard prescribed by the New York Family Court Act for the termination of parental rights violated the parents' due process rights. 455 U.S. at 747, 102 S.Ct. 1388. The Santosky Court made it clear that state intervention to terminate parental rights must be accomplished by procedures meeting the requisites of due process.
* * *
While there is no laundry list of specific procedures that must be followed to protect due process guarantees, an analysis of the United States Supreme Court's prior decisions identifies certain procedures that are typically required before *696 an individual can be deprived of a property or liberty interest. In all situations, the Court has required fair procedures and an unbiased decisionmaker. Additionally, the Court has also required notice of the government's action and an opportunity to respond before termination of the interest.
J.B., at 1064.
In In re E.L., 732 So.2d 37 (Fla. 2d DCA 1999), the appellate court found the trial court erred in terminating the mother's rights based on her failure to appear at the advisory hearing where she was never given proper notice of that hearing via personal service of the petition to terminate parental rights. Similar due process concerns are present in the instant case where the record fails to demonstrate that the parents were furnished with a written notice to appear at the adjudicatory hearing at a time and date certain. While the parents can, as noted in E.L., consent to termination through the action of their counsel, their counsel did not so consent and, in fact, objected to the proceeding taking place without the parents present to defend themselves.
I would go so far as to require written notice in order to satisfy due process concerns and avoid the problem this case presents. The record before us fails to contain such evidence, and moreover, heavily suggests the parents were not, at the advisory hearing, properly informed of the date and time of the adjudicatory hearing as mandated not just by statute and court rule, but by basic notions of fair process. A form order with the time and date of the adjudicatory hearing left blank is not fair process.
Within the context of a 8.270(b) hearing, the DCF should be given the opportunity to show if either of the parents was, in fact, properly notified in a written court order of the date, time and place of the adjudicatory hearing.